410 So.2d 815 (1982)
J. C. GAUTREAU, Plaintiff-Appellant,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, et al., Defendant-Appellee.
No. 8513.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Rehearing Denied March 23, 1982.
*816 Theall & Fontana, Gary E. Theall, Abbeville, for plaintiff-appellant.
Caffery, Oubre & Dugas, Patrick T. Caffery, New Iberia, for defendant-appellee.
Before DOMENGEAUX, GUIDRY, FORET, STOKER and DOUCET, JJ.
DOUCET, Judge.
This appeal arises out of a suit, filed by appellant, styled "Petition for Insurance Benefits and for Declaratory Judgment", wherein plaintiff sought damages for two electric motors destroyed by lightning, pursuant to his insurance policy with defendant, and asked for a declaratory judgment as to whether as a member of the Vermilion Parish Farm Bureau he was entitled as a matter of right to purchase insurance policies from Southern Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Mutual Insurance Company, defendants-appellees herein. Defendants filed a motion for summary judgment, and the trial court granted same, holding the claim for lightning loss had prescribed, and that plaintiff was not entitled to renewal of his insurance coverage by virtue of his membership in the aforesaid organization where policy provisions afforded the insurer the right to cancellation.
That the defendant successfully defeated its customer's claim for payment of lightning losses by plea of prescription is not before this court. On appeal, plaintiff alleges only that genuine issues of fact exist precluding a summary judgment; that the articles and by-laws of the membership organization prevailed over contrary policy *817 stipulations, and that issues of fact exist as to whether plaintiff met the underwriting criteria of defendant's insurance policies. We reverse.
Plaintiff, in his petition, alleges: that he has been a member of the Louisiana Farm Bureau for many years; that the organization made available to its members low cost insurance and he has taken advantage of this membership benefit for many years; that the members are the owners of the insurance operations, which are conducted for their mutual benefit; that he suffered losses due to lightning and defendant arbitrarily and capriciously refused to pay his subsequent claim; that thereafter defendants informed him that his automobile policy would not be renewed and when he inquired as to the reasons he was told that it was because of "claims experience" when in reality no claims had been made on said policy; that defendants later admitted there had been no claims experience on that policy, but were refusing to renew because of the attitude of the plaintiff; that defendants further notified plaintiff they were refusing to renew all of his policies; that he was led to believe that defendants had no right to refuse coverage to a member in good standing, as supported by the articles, charter, and bylaws of the organization, at least under the circumstances.
Affidavits were filed to the effect that members of Farm Bureau understand insurance is available to members as a matter of right. However, Mr. Graugnard, member of the board of many of the organizations involved, was deposed and asked whether members were entitled to insurance, to which he responded that one must meet the underwriting criteria.
Preliminarily, it should be noted that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits show no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. C.C.P. Art. 966. Papers supporting the position of the party moving for summary judgment are to be closely scrutinized, while the opposing papers are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La. 1981). A summary judgment is not appropriate when it is based upon affidavits and accompanying pleadings and other documentary evidence to establish subjective facts such as motive, intent, good faith or knowledge. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3rd Cir. 1974), Fontenot v. Aetna Insurance Co., 225 So.2d 648 (La. App. 3rd Cir. 1969). Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubts should be resolved in favor of a trial on the merits. Cates v. Beauregard Elect. Coop., Inc., 328 So.2d 367 (La.1976); Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Clement v. Taylor, 382 So.2d 231 (La.App. 3rd Cir. 1980).
Succinctly stated, the issue before us is whether, as a matter of law, a petition alleging arbitrary and capricious[1] non-renewal of an insurance policy offerred under a group plan states a cause of action when the contract between the parties gives the insurer the option not to renew.
Defendants admit that their insurance may be sold only to members of a farm bureau, but maintain that the policy provisions afford them absolute right to refuse renewal regardless of any other representations or the motive for their actions. We agree that this represents the orthodox view.
A similar defense was made in Spindle v. Travelers Ins. Co., 66 Cal.App.3rd 951, 136 Cal.Rptr. 404 (1977), wherein plaintiff-physician brought suit against his malpractice insurer alleging that defendant had cancelled his policy to coerce the medical group, of which plaintiff was a member, into accepting higher insurance premiums. Plaintiff's complaint alleged defendant did so willfully with malice and intent to harm plaintiff. The trial court sustained defendant's demurrer, finding that the insurer had *818 an absolute right to cancel. The appellate court reversed, holding that the doctrine of implied covenant of good faith and fair dealing which had in the past been held applicable to an insurance company's failure to settle and failure to pay claims to the insured also extended to cancellation provisions of the plaintiff's policy. cf: L'Orange v. Medical Protective Company (6th Cir. 1968) 394 F.2d 57 (cancellation motivated by insured's testimony adverse to insurer held contrary to public policy). The principles espoused in the above cases have received overwhelming doctrinal support. See: Note, Intimidation of Plaintiff's Witness in a Malpractice Suit by Cancellation of Insurance, 63 NW.U.L.Rev. 873 (1969); Comment, InsuranceCancellation ClauseImproper Motive Invalidates Insurers Cancellation, 54 Iowa L.Rev. 649 (1969); Note, InsuranceThe Exercise of a Cancellation Clause by an Insurer as a Breach of Contract, 37 U.Mo.K.C.L.Rev. 154 (1969); Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 Harv.L.Rev. 369 (1981).
See also: Murphy v. Seed-Roberts Agency, Inc., 79 Mich.App. 1, 261 N.W.2d 198 (1977), where the court reasoned that the cancellation clause merely provided the procedure by which coverage could be terminated and did not set forth the grounds for cancellation.
Insurance policies are inherently adhesive, Continental Auto. Assoc., Inc. v. Hansen, 334 So.2d 437 (La.App. 4th Cir. 1976), as a result of the unbalanced relationship between insurer and insured. The language of the policy is drawn by the insurer, who has the aid of wide experience and highly skilled advisors; hence the policy is construed against the insurer. LSA-C.C. Art. 2474. This rule of construction, resolving doubts against the seller, is particularly applicable where there is substantial disparity in relative bargaining power between parties. Haymon v. Holliday, 405 So.2d 1304 (La.App. 3rd Cir. 1981). Invariably the policy will contain a provision which gives both parties an absolute right to cancel, however, this right is more often exercised by the insurer than the insured. Smoot, The Cancellation Clause, 295 Ins.L.J. 675, 676 (1947). Similarly, somewhere in the print will be found a clause permitting the maker of the instrument to refuse renewal for any reason whatsoever. Arbitrary exercise of either right by the insurer undoubtedly results in inconvenience and often loss to the insured. It makes little difference to the insured whether his insurance is lost through cancellation or refusal to renew. His insurance record is in many respects analogous to a conventional credit rating; the longer the duration of relationship between insurer and insured, the better position the insurer is in to evaluate the risk involved and adjust rates accordingly. When the relationship is unilaterally terminated without cause related to risk the insured is denied partial benefit of his bargain. His frustrations in securing a new policy are compounded by the scarcity of competitive price advertising by insurers.
Insurers are purveyors of a vital, indeed oft legally required, service which is quasi-public in nature. They hold themselves out as fiduciaries, and with the public's trust must go responsibility consonant with that trust. Accordingly, we hold that in light of the peculiar relationship between the parties, a covenant of good faith and fair dealing was implied in the policy issued unto plaintiff pursuant to a group plan which would preclude the defendant from refusing renewal for arbitrary and capricious reasons. Such a result is in accord with the expectations of the members of the farm bureau as alleged in plaintiff's petition and accompanying affidavits. If any member could be denied coverage because of "attitude", the group label assigned to the policy would be nothing more than an empty sales pitch with no corresponding benefit to the group. Therefore, the plaintiff is entitled to his day in court to establish that the insurer exercised its contractual discretion for a reason outside the contemplated range of reasons for non-renewal.
Defendants claim that reversal of the trial court's decision would abrogate *819 freedom of contract. However, this doctrine presupposes that there is equality of bargaining power between the parties and that terms of the contract are not predetermined before negotiations begin. See Kessler, Contracts of AdhesionSome Thoughts About Freedom of Contract, 43 COLUM.L.REV. 629 (1943). It is clear that the present contract is not the product of any meaningful choice by appellant. Assuming that most reasons which motivate an insurance company to cancel or refuse renewal are reasonable, for example an increase in or failure to fully disclose the extent of the risk involved, the rule announced today effects only a minor limitation upon the contractual freedom of the maker of the policy. We have never had and never shall have unlimited liberty of contract, either in its phase of societal forbearance or in its phase of societal enforcement. 6A Corbin, Contracts § 1376 at 2d (1962).
Alternatively, plaintiff may be able to establish that the charters of the insurers mandate that members of the farm bureaus be entitled to coverage. Similarly, the plaintiff may be able to establish a contract between the insurers and farm bureaus representing that he is to be afforded coverage. If any such contract is susceptible of conflicting interpretations, the trial court should adopt a construction in accordance with justice and fair dealing instead of one entailing loss to a party, as persons may be expected to contract with one another on a basis equitable to each. Haymon v. Holliday, supra; Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963).
For the purpose of reviewing the propriety of a summary judgment, the plaintiff's allegations must be considered true; thus we need not concern ourselves with problems of proof plaintiff may encounter in establishing that the defendants' motives were arbitrary or capricious, and/or that the insurers charters of a contract between them and the farm bureaus mandated coverage be afforded to members.
For the reasons assigned the judgment appealed from is reversed and the case remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
STOKER, J., concurs and assigns written reasons.
FORET, J., concurs for reasons assigned by STOKER, J.
DOMENGEAUX, J., concurs in the result.
GUIDRY, J., dissents and assigns written reasons.
STOKER, Judge, concurring.
I concur in the result reached by the majority.
The provisions of the charter or bylaws of the Louisiana Farm Bureau or the Southern Farm Bureau are not material or relevant to the issue presented by the motion for summary judgment in the case. This might not be so if the two bureaus and the two insurers were the same entities. It is established, however, that they are separate and distinct entities.[1] In any event, the charters and bylaws of the two bureaus do not establish the right to renew insurance claimed by plaintiff. Therefore, the only ways plaintiff may establish that Southern Farm Bureau Casualty Insurance Company or Louisiana Farm Bureau Insurance Company are obligated to afford him insurance is through one of two means: either through (1) some contractual relations between the bureaus and the insurers which grant such rights to bureau members, or (2) some provisions in the charters of the insurers requiring that members of the bureaus be afforded such rights. Without some support, plaintiff's understanding and impression, or those of other members, cannot govern the case.
*820 In paragraph 19 of his petition for declaratory relief, plaintiff alleges the following: "Plaintiff submits that the articles, charter, bylaws and other organizational documents will show that he is entitled to the insurance coverage he has received in the past as a membership benefit." It is not clear whether plaintiff refers in this allegation to the bureaus or the insurers. The charters of the insurers were not submitted by either party in support of or in opposition to the motion.
The policies of insurance which existed between plaintiff and the defendant set forth the contract rights between these parties. The insurers had the right under insurance contracts to decline to renew the policies.
The majority opinion includes the following pronouncements:
"... we hold that in light of the peculiar relationship between the parties, a covenant of good faith and fair dealing was implied in the policy issued unto plaintiff pursuant to a group plan which would preclude the defendant from refusing renewal for arbitrary and capricious reasons."
With respect, I disagree entirely with this pronouncement.
Irrespective of the above comments I concur on the narrow ground that plaintiff should be given the opportunity at a trial to establish that the charter, bylaws, or other regulations of the insurers (not of the bureaus) extend to him the rights he claims, or that some contract granting such rights exists between the bureaus and the insurers for the benefit of bureau members. Such rights would, of course, have to be of a nature which would override the contract provisions of the policies in question. If plaintiff cannot carry the burden of proof, then the comments of the trial court in its reasons for judgment would be apropos.
For the foregoing reasons, I concur in the result reached by the majority.
DOMENGEAUX, Judge, concurring.
In considering this motion for summary judgment, whether or not plaintiff can ultimately prevail, should be of no concern to us at this time. Taking a cue from the Louisiana Supreme Court in the recent consolidated cases of Vermilion Corporation v. Norman Vaughn, Freddie Broussard, and Larry J. Broussard, 397 So.2d 490 (La.1981), I feel that we have little choice but to reverse the granting of summary judgment and remand this case for trial on the merits.
A review of the pleadings, depositions, affidavits, and other documents show that there is a very close knit association between the Farm Bureau, its members and the defendant Farm Bureau Insurance Companies. Some of these documents indicate that the Farm Bureau in Louisiana has approximately 63,000 members. It is a nonprofit organization designed primarily to help people in agriculture. Members have certain rights. Actually the Farm Bureau organization pretty well owns the defendant insurance companies. A perusal of the bylaws indicate that members of the Bureau may have rights to insurance which would not be available to individuals who may seek insurance from insurance companies other than those companies with the Farm Bureau. Three of the affidavits submitted by members of the Farm Bureau indicate that they were under the impression that they had the automatic right to be insured by these companies. Whether this is true or not, and regardless of how farfetched it may be, is of no moment to us now in determining the merits of the summary judgment motion. A trial on the merits may show that members may have been led to believe this by people in authority with the defendant insurance companies, which could result in the possible application of the doctrine of estoppel.
Article IV, Section 6 of the Farm Bureau bylaws provides that members "shall be entitled to the benefits and privileges of any affiliated or associated insurance company service." Although I do not necessarily subscribe to the argument at this time, it could be argued that one interpretation of this provision would deem to mandate coverage by a member upon request, absent a justified cause to refuse coverage.
*821 For examples of the general proposition that summary judgment procedure should be used cautiously and sparingly and that any reasonable doubt concerning the existence of such should be resolved against the mover and in favor of a full trial on the merits, see Mecom v. Mobil Oil Corporation, 299 So.2d 380 (La.App. 3rd Cir. 1974), and Garrett v. Gayle, et al, 405 So.2d 622 (La. App. 3rd Cir. 1981).
If plaintiff should have to lose this case, it should be after a full trial, and not by summary judgment.
I respectfully concur.
GUIDRY, Judge, dissenting.
The record reflects that defendants enjoy a contractual right to refuse renewal of plaintiff's insurance coverage. Additionally, the record establishes that defendants complied with all statutory and contractual provisions for non-renewal. Under these circumstances defendants are entitled to summary judgment absent some showing by plaintiff that defendants' contractual right to refuse renewal of plaintiff's insurance coverage is unenforceable or that a genuine issue of fact material to this determination exists. As set forth in Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980):
"On a motion for summary judgment the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence showing that material facts are still at issue; only at this point may he no longer rest on the allegations and denials contained in his pleadings." (Emphasis mine)
In my view the supporting documents presented by defendants are sufficient to resolve all material fact issues favorable to them. This showing shifted the burden to plaintiff to present evidence establishing that material facts are still at issue. At that point plaintiff could no longer rely upon the allegation in his petition to the effect that the articles, charter, bylaws and other organizational documents show that he is entitled to the insurance coverage he has received in the past as a membership benefit, but rather it was incumbent upon him to present evidence that at least a factual dispute existed on this issue.
In opposition to defendants' motion for summary judgment plaintiff submitted documentary evidence, including some of the charters and bylaws of the parties, and affidavits to the effect that it was his understanding, and that of a friend of his, that as members of the farm bureau they were entitled to be issued policies. The documentary evidence submitted does not establish plaintiff's right to policy renewal nor can his understanding and impression of his rights as a bureau member "govern the case". The plaintiff having presented nothing more in opposition to the motion, I agree with the learned trial judge that the record presents no genuine issue of fact material to a determination that plaintiff is not entitled to a renewal of insurance coverage with defendants.
For these reasons I respectfully dissent.
NOTES
[1] Although not the exact terminology employed, this is the gist of the plaintiff's complaint, which, for our purposes of review, is to be liberally construed.
[1] Plaintiff alleges that the two insurers are domestic corporations. The testimony of James D. Graugnard, president of the bureau, and of the insurers established that each of the companies was a separate entity. The fact that the bureaus may own the insurers does not affect the rights of the bureaus' members.