**Patricia L. BUELL, Plaintiff,**

v.

**SECURITY GENERAL LIFE INSURANCE COMPANY, an Oklahoma corporation, American Life and Casualty Company, an Iowa corporation, American Marketing Services, Inc., an Arizona corporation, formerly known as and doing business as Benecenter of Colorado, Inc., a Colorado corporation, and Benecenter of Colorado, Inc., Defendants.**

**Civ. A. No. 91–B–868.**

United States District Court, D. Colorado.

Dec. 6, 1991.

---

John A. Cimino, John A. Cimino, P.C., Denver, Colo., for plaintiff.

Michael A. Williams, Steven D. Plissey, Williams, Youle & Koenigs, P.C., Denver, Colo., Thomas M. Herlihy, Sean P. Nalty, Herlihy & Bane, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION
## AND ORDER

BABCOCK, District Judge.

Beginning in 1984, plaintiff Patricia L. Buell (Buell) had a group insurance policy with defendants. In 1986, she was diagnosed with lung cancer. In 1990, defendants terminated the group policy. Defendants, although continuing to pay Buell's medical expenses, contend that they are not required to do so. Buell sued in Colorado state court seeking a declaratory judgment

that she is covered under the policy as well as damages for breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and outrageous conduct. The action was removed to this court and jurisdiction exists on diversity of citizenship.

Cross motions for summary judgment have been filed. I conclude that the policy is uncertain with respect to coverage and, therefore, must be construed against defendants. Accordingly, I grant Buell's motion for summary judgment on her declaratory judgment claim. However, because defendants have continued to reimburse Buell for her medical expenses, there has been no breach of contract, no breach of the implied covenant of good faith and fair dealing, no negligent misrepresentation, and no outrageous conduct. Accordingly, I grant defendants' motion on these claims.

## I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To make a sufficient showing, the nonmovant must come forward with enough evidence to permit a reasonable jury to find that the essential element has been established. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## II.  FACTS

There is no genuine dispute of material fact. In 1983, defendant American Life and Casualty Insurance Company (American Life) delivered to Consumer Health Care Association (CHCA) a group health insurance policy (the policy). In 1984, Buell was issued a Certificate of Group Insurance (the certificate) as evidence of the insurance provided under the policy. The certificate provides in part: "The benefits described in this Certificate are subject to all of the provisions, terms and conditions of the Policy. The Policy alone constitutes the entire contract under which rights and benefits are provided." The "Policy Term" section of the policy provides:

> The policy continues in effect from its effective date specified on the face of the policy as long as the premium is paid as provided herein, subject to the Grace Period as provided in the General Provisions hereof; provided however that:
>
> . . . .
>
> B.  The Company may terminate the policy on any premium date by giving written notice to the Policyholder at least 31 days prior to any premium due date.
>
> C.  The Company will not terminate or nonrenew the certificate solely on the grounds of the deterioration of the health of the Insured.

In the "Policy Specifications" section, the Policyholder is listed as "Consumer Health Care Association." The premiums were due monthly.

The "Major Medical Benefits" section of the Policy provides:

> When as a result of sickness or accidental bodily injury, an Injured Person incurs Covered Expenses shown herein while this insurance is in force as to such Person, the Company will pay the applicable percentage, shown in the Policy Specifications, of such expenses incurred in excess of the Deductible Amount, not to exceed the Maximum Amount.

In 1985, defendant Security General Life Insurance Company (Security General) purchased from American Life the rights and insurance liability risks represented by the policy. From that date, Security General received all premiums and was responsible for all claims incurred under the policy.

In 1986, Buell became permanently disabled with lung cancer.

By letter dated April 26, 1990, Security General notified CHCA that Security General was terminating the entire group policy effective May 31, 1991. The decision was based upon poor claims experience of the entire group. By letter dated May 19, 1990, Security General notified Buell that after June 19, 1990, her health insurance policy would no longer be in force.

Although Security General disputes that it is required to pay for expenses resulting from Buell's cancer incurred after the policy was terminated, it has continued to provide Buell with benefits under the policy. However, Security General has required that every three months Buell fill out a one-page "Medical Insurance Claim Form" verifying the nature of her claim and the doctors she has consulted in the past 12 months.

## III. DISCUSSION

### A. *Declaratory Judgment: Must Defendants' Pay For Buell's Medical Expenses?*

The parties agree that this case should be decided according to Colorado law. The parties also agree that Colorado distinguishes between "expense" policies and "injury" or "occurrence" policies. In an "expense" policy, which provides insurance for medical and hospital related expenses as such expenses are incurred, "the insured is not entitled to post-termination benefits beyond the terms providing for extended coverage." *Lister v. American United Life Ins. Co.*, 797 P.2d 832, 834 (Colo.App. 1990). In an "injury" or "occurrence" policy, which provides coverage for an injury or illness occurring while the policy is in force, the insured is entitled to post-termination coverage for expenses arising out of that injury or illness. *Loesekan v. Benefit Trust Life Ins. Co.*, 552 P.2d 36, 37 (Colo. App.1976).

The parties dispute whether the policy at issue here is one for expenses or one for injury. In deciding this issue, I follow settled principles of insurance law.

An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation.... In applying these principles, words should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended. Where a contractual provision is clear and unambiguous the court should not rewrite it to arrive at a stained construction. *However, when a contractual provision is reasonably susceptible to different meanings it must be construed against the drafter and in favor of providing coverage to the insured.*

*Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990) (citations omitted) (emphasis added).

Thus, if the policy can reasonably be construed as either an expense policy or an injury policy, then it must be construed against defendants and in favor of coverage. *See id.; United Bank v. Hartford Accident & Indem. Co.*, 529 F.2d 490, 493 (10th Cir.1976) (applying Colorado law) ("where there is ambiguity or uncertainty with respect to coverage, construction will favor the insured"). I conclude that the policy, when read in conjunction with Colorado statutory law, can reasonably be construed as an injury policy. Accordingly, Buell is entitled to summary judgment on her declaratory judgment claim.

Colo.Rev.Stat. § 10–8–116(2)(b)(V) reads:

If the group insurance policy provides hospital, surgical, or major medical insurance or any combination of these coverages on an expense-incurred basis, for other than specified diseases or accidental injuries only, it shall also contain a conversion privilege conforming to the requirements of subsection (3) of this section.

Thus, a group policy that provides coverage on an expense-incurred basis "shall" contain a "conversion privilege." The policy here does not contain a conversion privilege. Consequently, an insured could reasonably conclude that the policy must be an injury policy and not an expense policy. In addition, the policy does not explain to the insured what happens when the policy ter-

minates. Although the policy can reasonably be construed as one for expenses, I hold that, because it does not contain a conversion privilege and does not explain what happens upon termination, the policy can also reasonably be construed as an injury policy.

Defendants' reliance on *Lister* is misplaced. First, unlike the policy here, the insurance policy at issue in *Lister* contained a conversion privilege. Attachment 1 to Defendants' Exhibit M § 5. Moreover, the policy at issue in *Lister* contained an "Extended Benefits" section which explicitly stated the coverage provided when the policy terminated. *Lister*, 797 P.2d at 834. This factor was central to the court's decision. *See id.* Buell's policy contains no "Extended Benefit" section and does not state what coverage, if any, is provided when the policy terminates.

■ Because the policy "is reasonably susceptible to different meanings," it must be "construed against the drafter and in favor of providing coverage to the insured." *Chacon*, 788 P.2d at 750; *see also Houghton v. American Guar. Life Ins. Co.*, 692 F.2d 289 (3d Cir.1982). Therefore, a judgment will issue declaring that Buell is entitled to benefits under the policy for expenses incurred as a result of her lung cancer. Because the benefits resulting from Buell's cancer were fixed before the policy's termination, she is not required to make future premium payments. *See Loesekan*, 552 P.2d at 37.

Finally, it is undisputed that only Security General is responsible for claims under the policy. Accordingly, because no other defendant is responsible for providing Buell with coverage, the declaratory judgment will be directed against Security General alone.

### B. *Breach of Contract*

Buell claims that she is entitled to breach of contract damages because defendants: (1) failed to pay her for future benefits believed to be $1,000,000; (2) wrongfully terminated the policy; and (3) failed to give her timely notice of the termination as required by the policy.

### 1. Failure to Pay Buell Future Benefits

■ As discussed above, the policy requires coverage for Buell's expenses related to her cancer. It is undisputed that Buell has received continuous policy benefits pending the outcome of this case. Thus, the insurance contract has not been breached. Because there is no breach of contract, Buell is entitled to no damages. No reasonable construction of the policy supports Buell's contention that she is entitled to receive covered expenses before those expenses are incurred.

### 2. Wrongful Termination

■ Buell also claims that the policy was wrongfully terminated because the termination was based "solely on the grounds of the deterioration of the health of the Insured." By using "Insured" and not "Insureds," the policy allows for termination based on poor claims experience of the entire group. It is undisputed that Security Life terminated the group policy, not because of the claims experience of any one individual, but because of poor claims experience of the entire group. Accordingly, defendants are entitled to summary judgment on this claim.

### 3. Timely Notice

■ Next, Buell claims that the termination was wrongful because she was not given proper notice of the termination. No material dispute exists on this claim.

The policy provides in pertinent part: "The Company may terminate the policy on any premium due date by giving written notice to the Policyholder at least 31 days prior to any premium due date." In the "Policy Specifications" section, the Policyholder is listed as "Consumer Health Care Association." It is undisputed that Consumer Health Care Association was given timely written notice. Consequently, there was no breach. Buell contends that there is a genuine dispute of fact concerning whether Buell was given 31 days notice, or only 30. This dispute is not material because the policy requires that notice be given to CHCA and not to Buell.

### C. *Covenant Of Good Faith And Fair Dealing*

In response to defendants' motion for summary judgment, Buell points to four theories to support her breach of the implied covenant of good faith and fair dealing claim: (1) insufficient notice being given regarding termination of her certificate; (2) termination of her certificate solely on the grounds of deterioration of the health of the insured; (3) being singled out when her certificate was terminated; and (4) requiring her to fill out the one-page "Medical Insurance Claim Form" every three months. *See* Plaintiff's Reply at 12; Plaintiff's Brief Pursuant to Court Order at 2. All of these theories fail as a matter of law.

I have already concluded that the first and second theories are without merit. As to the third ground, being singled out, the evidence is uncontroverted that everyone who was insured under the policy was terminated. Accordingly, this theory is also without merit.

■ The theory based on the one-page information sheet also fails. In Colorado, breach of the covenant of good faith and fair dealing "does not generally give rise to an independent tort claim." *Friedman v. Colorado Nat'l Bank*, No. 90CA0248, 1991 WL 143506, at *9 (Colo.App. Aug. 1, 1991). Colorado has recognized an exception to this rule where an insurer unreasonably denies or delays payments of a claim. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo.1984). I am aware of no Colorado court expanding this tort to cover a theory such as Buell's.

However, even assuming that such a theory gives rise to a cognizable claim, I conclude that Buell's claim is legally insufficient. "The question of whether an insurer has breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances." *Id.* Buell has continued to receive insurance benefits. Consequently, her insurer has a right, periodically, to be apprised of her medical status. I conclude that no reasonable jury could find that the periodic notification requirement is unreasonable. Ac-

cordingly, this claim fails as a matter of law.

### D. *Outrageous Conduct*

■ "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress...." *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753, 756 (1970) (quoting Restatement (Second) of Torts § 46(1) (1965)). However:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* (quoting Restatement (Second) of Torts § 46 cmt. d).

It is for the trial court to determine, in the first instance, whether the conduct could be regarded as sufficiently atrocious to permit recovery. *Therrien v. United Air Lines, Inc.*, 670 F.Supp. 1517, 1524 (D.Colo.1987); *First Nat'l Bank v. Collins*, 44 Colo.App. 228, 616 P.2d 154 (1980). I conclude as a matter of law that defendants' conduct in this case is not sufficiently outrageous to permit recovery. Accordingly, defendants are entitled to summary judgment on this claim.

### E. *Negligent Misrepresentation*

■ Buell's claim for negligent misrepresentation is that defendants, in the policy, negligently misrepresented that she would be entitled to coverage as set forth in the policy. This claim is not cognizable. *Scott Co. v. MK Ferguson Co.*, No. 90CA1100, 1991 WL 242922, at *5, — P.2d —, — (Colo.App. Nov. 21, 1991) ("the court erred in allowing the [negligence and negligent misrepresentation] claims to go to the jury since no duties independent of contractual duties were alleged to have been breached"); *see Jardel Enters., Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1303 (Colo.App. 1988). Moreover, the claim also fails be-

cause Buell has received continuous payment for her medical expenses as provided in the contract.

F. *Exemplary Damages*

Because Buell is not entitled to any damages, she is not entitled to exemplary damages.

Accordingly, it is ORDERED that:

(1) a judgment shall issue declaring that Security General Life Insurance Company is obligated to provide Buell with coverage under Master Group Policy Number G–83255 for expenses incurred as a result of Buell's lung cancer with Buell not required to make future premium payments;

(2) defendants' motion for summary judgment on plaintiffs claims for breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, outrageous conduct, and punitive damages is GRANTED, and those claims are DISMISSED WITH PREJUDICE; and

(3) final judgment shall enter with Buell awarded her costs.