**TOWN OF BRECKENRIDGE,**
**Plaintiff–Appellee,**

v.

**GOLFORCE, INC., Jack Nicklaus Design, Inc., and Golden Bear International, Inc., Defendants–Appellants.**

No. 91CA0682.

Colorado Court of Appeals, Div. I.

Oct. 8, 1992.

Rehearing Denied Nov. 5, 1992.

Certiorari Denied May 17, 1993.

Wells, Love and Scoby, Craig N. Blockwick, Boulder, for plaintiff-appellee.

Popham, Haik, Schnobrich and Kaufman, Janet A. Savage, David S. Fein, Denver, for defendants-appellants.

Opinion by Chief Judge STERNBERG.

Defendants, Golforce, Inc., Jack Nicklaus Design, Inc. (JND) and Golden Bear International, Inc., all related companies, appeal a judgment entered on a jury verdict in favor of the town of Breckenridge on a breach of contract claim. We affirm.

The town of Breckenridge hired JND to design a golf course. The town also contracted with Golforce, Inc., to coordinate construction and supervise the bidding process. Golforce prepared contract documents incorporating design standards of JND. Following receipt of competitive bids, Randall Blake, Inc., was retained by the town as general contractor.

Blake hired Pioneer Sand Company to supply the sand for the golf course. The type and quality of sand was to be based upon the "putting greens specifications" published by the United States Golf Association (USGA). The design agreement specifically provided that specifications would include "specifications for greens soil mix as recommended by the [USGA]." The USGA specifications contemplate that the steps for constructing putting greens be followed exactly and completely.

The course was constructed, and, shortly after it opened in the spring of 1985, percolation problems developed on the greens.

The town replaced the greens, hiring Golforce Construction to do the work. Meanwhile, the town refused to pay the balance due Blake, and that dispute was submitted to arbitration under the contract terms. When the town lost that arbitration, it filed this suit.

The case was tried to a jury which entered a verdict in favor of the town. Judgment was entered thereon, and this appeal followed.

The defendants assert the court erred when it: (1) did not allow expert testimony to establish a professional standard of care for the jury to apply to its interpretation of the contract; and (2) awarded prejudgment interest when the town's pleadings did not contain a specific request for such relief.

## I.

The first issue on appeal is the standard of care applicable to the contractual obligations and performance of the parties, specifically as to performance and supervision of the sampling and testing procedures used to determine compliance with USGA standards. The defendants argue that they were engaged in the profession of "golf course landscaping" or "golf course architecture," and for the jury properly to resolve the case, it should have received expert testimony as to the applicable professional standard of care. Without such testimony, they argue, the town did not present a *prima facie* case.

The trial court, however, determined that the language of the contract provided the standard of care and that expert testimony was not needed. We agree with the court.

First, we note that there is no case or statute in Colorado expressly designating golf course landscapers, coordinators, or designers as professionals. Further, although in our increasingly complex society, courts may determine a need for expert testimony for new or evolving professions, *see, e.g., United Blood Services v. Quintana,* 827 P.2d 509 (Colo.1992) (professional standard for blood bank), we perceive no need here to use anything other than established principles of contract law.

The contracts in this case were based on American Institute of Architects (AIA) sample contracts, and there was testimony as to practices and procedures under AIA contracts. The critical issue here was a specific requirement that the mixture of the material that would go into the greens contain "no more than 25% particles smaller than 0.25 mm," a USGA specification. This standard was related to drainage and percolation conditions.

Also, USGA specifications, which the contract made controlling, required quality control checks to be made periodically on the soil components as well as on the final mix. The design agreement and the coordination agreement required JND and Golforce to perform this quality control role.

The interpretation of a written contract is generally a matter of law and may be reviewed *de novo* by this court. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986). We conclude that the contract itself established both the obligations of the parties and the standard of care to be followed by them in carrying out those obligations.

Whether there has been a breach of a contract is an issue for the fact finder. *Little Thompson Water Ass'n v. Strawn,* 171 Colo. 295, 466 P.2d 915 (1970). Consequently, a jury's verdict on such matters will be upheld if there is competent evidence in the record to support it. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo. 1981). Here, there was sufficient evidence before the jury to allow it to interpret the contract and determine whether the terms thereof were breached.

This conclusion also disposes of the defendants' claim that the court erred in excluding opinion testimony applying a professional standard of care to the terms of the contract. The court allowed the witness to testify to industry practices and procedures and to provisions and interpretation of standard AIA contracts but not to his opinion of the parties' responsibilities under the contract. There was no error in such ruling.

## II.

Defendants next contend the award of prejudgment interest was error as the town

did not expressly request interest in either its complaint or amended complaint. The town responds that the court had the latitude under C.R.C.P. 54(c) to award statutory interest, pursuant to § 5–12–102, C.R.S. (1992 Repl.Vol. 2), even when not requested in the pleadings. We agree with the town.

Statutory interest is awarded pursuant to a legislative determination of the need to compensate persons who suffer economic harm when they are deprived of property to which they are legally entitled. *Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362 (Colo.1989).

Some statutory interest provisions mandate a request in the pleadings for interest. *See* § 13–21–101, C.R.S. (1987 Repl.Vol. 6A) (prejudgment interest in tort actions). Here, however, the court awarded the town interest pursuant to § 5–12–102, which provides for prejudgment interest in contract actions, and that provision has no such pleading requirement.

Defendants concede the difference between the statutes but, based on *Colorado Performance Corp. v. Mariposa Associates*, 754 P.2d 401 (Colo.App.1987) and *Loesekan v. Benefit Trust Life Insurance Co.*, 37 Colo.App. 493, 552 P.2d 36 (1976), argue that the requirement of § 13–21–101 should apply to actions under § 5–12–102. Defendants' authority is distinguishable as *Mariposa* did not address the need for a request for interest in the pleadings and *Loesekan* did not involve a request for interest under § 5–12–102.

In *Mesa Sand & Gravel v. Landfill, Inc., supra,* the supreme court noted that the purpose of the statute was to discourage one responsible for paying a claim from delaying payment and that the statute constitutes a legislative recognition of the time value of money. *See also Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259 (10th Cir.1989). To that end, an award of interest under this statute should be upheld if possible.

C.R.C.P. 54(c) captioned "Demand for Judgment," provides, in pertinent part:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings.* (emphasis added)

This provision has been used to give relief beyond the scope of the pleadings in other situations. *See Regennitter v. Fowler*, 132 Colo. 489, 290 P.2d 223 (1955) (complaint sufficient to require court to issue order to show cause even if not sufficient to support plaintiff's prayer for injunction); *DeCicco v. Trinidad Area Health Ass'n*, 40 Colo.App. 63, 573 P.2d 559 (1977) (error for court to reduce jury verdict even though it exceeded the amount sought in the complaint). Its effect, however, has not previously been construed in this situation.

As C.R.C.P. 54(c) is identical to, and modeled on, Fed.R.Civ.P. 59(c), federal authority on this issue is both relevant and persuasive. *Dlug v. Wooldridge*, 189 Colo. 164, 538 P.2d 883 (1975).

The federal courts have held that, if under the established facts, a claimant is entitled to interest, the court should grant it even thought the claimant did not request it in its pleadings. *Newburger, Loeb & Co. v. Gross*, 611 F.2d 423 (2d Cir.1979) (award of prejudgment interest proper even if party had not asked for such relief at any time in trial or appellate court); *Roth v. Fabrikant Bros.*, 175 F.2d 665 (2d Cir.1949); *see generally* Annot., 16 A.L.R.Fed. 748 (1973).

Accordingly, we hold that, if a court finds that a claimant is entitled to statutory interest under § 5–12–102, the court should award it, even in the absence of a prayer for such relief.

### III.

The other contentions of error are without merit.

The judgment is affirmed.

NEY and DAVIDSON, JJ., concur.